UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

VIRGINIA ROWE,

       Plaintiff,

v.                                 Case No: 5:16-cv-232-Oc-DNF

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

## OPINION AND ORDER

Plaintiff, Virginia Rowe, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

   **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

On March 10, 2010, Plaintiff filed applications for DIB and SSI, alleging an onset date of April 15, 2009. (Tr.274-280). Plaintiff's claims were denied initially and upon reconsideration. (Tr. 124-129, 137-138, 140-141). Plaintiff requested a hearing and on November 17, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Deborah Arnold. (Tr.55-73, 142). On January 12, 2012, the ALJ entered a decision finding Plaintiff not disabled. (Tr. 89-111). Plaintiff filed a request for review of the hearing decision. (Tr. 212). On June 24, 2013, the Commissioner's Appeals Council remanded the case back to the ALJ for further administrative proceedings. (Tr. 112-115).

On May 8, 2014, a second administrative hearing was held before the ALJ. (Tr. 36-54). On June 8, 2014, the ALJ entered a second decision finding that Plaintiff was not disabled. (Tr. 9-35). Plaintiff filed a request for review of the hearing decision which the Appeals Council denied on January 29, 2016. (Tr. 1-4). Plaintiff commenced this action by Complaint (Doc. 1) on March 21, 2016.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2009, her alleged onset date. (Tr. 15). At step two, the

ALJ found that Plaintiff had the following severe impairments: substance abuse with associated seizures, pancreatitis and depression; a personality disorder and degenerative disc disease. (Tr. 15). At step three, the ALJ found that Plaintiff's impairments, including the substance use disorder, meet sections 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15). The ALJ found that if Plaintiff stopped the substance use, Plaintiff would continue to have a severe impairment or combination of impairments, but that she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17).

Before proceeding to step four, the ALJ found that if Plaintiff would stop the substance use, she would have the residual functional capacity ("RFC") to

> perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She could lift 20 pounds occasionally and 10 pounds frequently and sit, stand, and/or walk throughout the workday. She could occasionally climb ladders, ropes, and scaffolds but should not perform work at unprotected heights or around dangerous moving machinery. She could perform one to three step tasks with no rapid pace. She could have occasional interaction with others.

(Tr. 18). At step four, the ALJ found that if Plaintiff stopped the substance use, she would be unable to perform her past relevant work as a psychologist, telemarketer, and moving estimator. (Tr. 24).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform if she stopped the substance abuse. (Tr. 25). In reaching this decision, the ALJ relied on the testimony of a vocational expert who stated that an individual with Plaintiff's RFC could perform the jobs of garment bagger, mail clerk, and folding machine operator. (Tr. 25). The ALJ found that Plaintiff's substance use disorder is a contributing factor material to the

determination of disability because Plaintiff would not be disabled if she stopped the substance use. (Tr. 26). The ALJ concluded that because the substance use disorder was a contributing factor material to the determination of disability, Plaintiff has not been disabled at any time from the alleged onset, April 15, 2009, through the date of the decision, July 8, 2014. (Tr. 26).

**II.     Analysis**

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to apply the correct legal standards to the medical opinions of record; and (2) whether the ALJ erred by failing to apply the correct legal standards to Plaintiff's agoraphobia, heart abnormalities, and upper extremity limitations at step four and five of the sequential evaluation process. (Doc. 18 p. 2).

Plaintiff argues that substantial evidence does not support the ALJ's determination that the opinion of treating physician Brad J. Broyles, M.D., was entitled to "little weight" and the opinion of evaluating physician David A. Karpf, Ph.D. was entitled to "great weight". (Doc. 18 p. 13-18).

**A. The ALJ's Treatment of Dr. Broyles' Opinion**

The record shows that on September 13, 2013, Dr. Broyles opined that Plaintiff had moderate limitations in the ability to understand, remember, and carryout simple instructions; marked limitations in the ability to understand, remember, and carry out complex instructions; marked limitations in the ability to interact appropriately with the public, supervisors and coworkers; and an extreme limitation in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 923-24). Dr. Broyles noted that Plaintiff suffered from"[a]cute and chronic anxiety and panic disorder, agoraphobia, markedly poor response to stress or change" along with back pain. (Tr. 924). Dr. Boyles opined that Plaintiff's ability to even leave her house was affected by her impairments. (Tr. 924). Dr. Broyles noted that

Plaintiff "has a history of alcohol abuse, but is not abusing currently. Severe impairments persist nonetheless." (Tr. 924).

In her decision, the ALJ summarized Dr. Broyle's opinion and explained the weight she accorded it as follows: "While this opinion is awarded some weight for the month it was rendered, the record reflects this was a short lived setback in the claimant's condition as evidenced by her subsequent improvement and her limited treatment during this period, and is therefore awarded little weight." (Tr. 23).

Plaintiff argues that Dr. Broyles' opinion should have been accorded significant weight given his status as Plaintiff's treating physician. (Doc. 18 p. 14). Plaintiff contends that the ALJ's statement that Plaintiff improved subsequent to the month Dr. Broyles offered his opinion is not supported by substantial evidence. (Doc. 18 p. 15). Plaintiff notes that an assessment from LifeStream Behavioral Center dated February 6, 2014, indicated Plaintiff reported that "[s]ome days I feel like I'm in panic mode all day long;" that she was only sleeping for about four hours and had difficulty shutting off her brain; that her mood was anxious, her thoughts were wandering, and her concentration poor; and that Plaintiff's insight and judgment were only fair. (Doc. 18 p. 15) (citing Tr. 1040, 1044). Plaintiff also notes that an April 21, 2014 assessment from LifeStream noted that Plaintiff's affect was broad and expansive and her speech was excessive and that her insights and judgment were only fair. (Doc. 18 p. 15) (citing Tr. 1055). Plaintiff contends that the ALJ improperly cherry-picked the evidence in order to reject Dr. Broyles' opinion. (Doc. 18 p. 15).

In response, Defendant argues that the ALJ properly accorded little weight to Dr. Broyle's opinion and that substantial evidence supports the ALJ's determination. (Doc. 19 p. 10). Defendant contends that the subsequent notes from LifeStream had marked improvement in her

condition subsequent to Dr. Broyles' September 12, 2013 opinion, and that other evidence in the record does not support the limitations Dr. Broyles' opined. (Doc. 19 p. 11-12).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ made no error in according little weight to Dr. Broyles' opinion as subsequent notes from LifeStream from February and April 2014 reveal that

Plaintiff had improvement in her thought process, mood, memory, and overall presentation. (Tr. 23, 1038-44, 1050-55). For example, on February 6, 2014, Plaintiff denied problems with her mood and reported her symptoms were "better;" her appearance, behavior, speech, affect, and perception were all normal; her thought process was organized; her thought content was appropriate; no delusions were evidenced; she displayed fully intact memory and average intelligence; her insight and judgment were fair; and she was fully oriented. (Tr. 1040, 1044). Two months later, on April 21, 2014, Plaintiff reported she had no difficulty performing self-care and household chores, and treatment notes state that Plaintiff had progressed and that no referrals or counseling were necessary. (Tr. 1051, 1054). Plaintiff's appearance, behavior, and mood were appropriate, her thoughts were organized and appropriate, her memory was intact, her insight and judgment were fair, and she was fully oriented (Tr. 1055). This evidence supports the ALJ's finding that Plaintiff's condition as found by Dr. Broyles in September 2013 was short-lived and that her subsequent improvement entitled the opinion to little weight.

As noted above, however, substantial evidence "is such relevant evidence as a reasonable person would accept as adequate support to a conclusion" and "[e]ven if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158. Here, the ALJ's discussion of Dr. Broyles' opinion and his explanation for giving the opinion little weight met this standard.

**B. The ALJ's Treatment of Dr. Karpf's Opinion.**

The record indicates that on June 9, 2010, Dr. Karpf performed a psychological evaluation of Plaintiff on behalf of the SSA. (Tr. 682-685). Dr. Karpf observed Plaintiff to have pressured speech, tangential speech, and rapid speech. (Tr. 683). Dr. Karpf noted that Plaintiff reported that she could not work due to chronic pain, anxiety, alcohol abuse, and apathy. (Tr. 682-683). Dr. Karpf noted that Plaintiff reported being able to travel in the community independently but that

she does not like to, "difficulty getting along with people in routine social settings", being isolative and mostly staying to herself, and that "depression is mostly responsible for occasional feelings of isolation." (Tr. 683). The mental status exam found "attention and concentration appeared impaired due to frequent ruminating", a reported impairment of long-term memory, "[m]ood and affect were consistent with moderate to severe depression", and difficulty sleeping. (Tr. 684-685). Dr. Karpf diagnosed alcohol dependence, major depressive disorder that was "recurrent" and "severe", posttraumatic stress disorder, avoidant personality disorder, and assigned a GAF score of 47. (Tr. 685). Dr. Karpf opined that she had "a severely dysfunctional childhood as well as the phobia of social situations", increasing pain and anxiety, and long-term memory deficits. (Tr. 686). Dr. Karpf opined that "Ms. Rowe does not seem capable of working at this time." (Tr. 686).

In her decision, the ALJ weighed the evidence from Dr. Karpf as follows:

> Dr. Karph [sic], who had conducted a consultative examination of the claimant, opined that if the claimant would refrain from substance abuse, that her mental status would likely improve to the point that she would be mentally capable of sustaining concentration, persistence, and pace to the degree that she could maintain work-like tasks (Exhibit 8F) (related to a representative of the district office, Exhibit 12E). Great weight is awarded to this opinion because it is consistent with the claimant's functional ability when not intoxicated.

(Tr. 23). The "Exhibit 12E" to which the ALJ refers is a "Report of Contact" form that was completed by a Michael Presley on June 15, 2010, whose credentials are not provided on the form. The subject portion of the form provides:

> Spoke with CE vendor Dr. Karph.
>
> 1) clmt is cognitively capable of managing funds, but due to a DAA it would be advised that she have a payee if awarded benefits.
>
> 2) statement regarding "inability to work" is predicated on her DAA use. If the clmt would refrain from DAA her mental status would likely improve to the point that she would be mentally capable of sustaining

> concentration, persistence and pace to the degree that she could maintain work-like tasks.
>
> Michael Presley S71 PRO

(Tr. 377). There is no other document in the record demonstrating it was Dr. Karpf's opinion that Plaintiff's inability to work was predicated by her drug and alcohol use as reported by Mr. Presley.

Plaintiff argues that there is no evidence in the record to support a finding that the opinion reported by Mr. Presley was actually Dr. Karpf's opinion. (Doc. 18 p. 17). Plaintiff contends that the ALJ erred by failing to follow the SSA's internal regulations, the Hearings, Appeals and Litigation Law Manual ("HALLEX"). (Doc. 18 p. 17). Plaintiff contends that the ALJ's hearing office should have contacted Dr. Karpf to verify that the additional information contained in Exhibit 12E was actually his professional medical opinion. (Doc. 18 p. 17).

In response, Defendant contends that Plaintiff's argument regarding Dr. Karpf is based solely on a formulaic application of the HALLEX and does not challenge Dr. Karpf's opinion on its merits. (Doc. 19 p. 12). Defendant argues that Plaintiff seems to imply that Mr. Presley engaged in falsifying Dr. Karpf's opinion and such a claim is utterly baseless. (Doc. 19 p. 15).

Here, the Court finds the ALJ erred by giving "great weight" to Mr. Presley's secondhand account of Dr. Karpf's opinion. Implicit in the Eleventh Circuit's discussion in *Winschel* is the understanding that a physician's opinion is actually <u>from</u> the physician, not a summarization of a discussion with the physician from a third party. Here, there is nothing to corroborate that Mr. Presley's summarization of his discussion with Dr. Karpf accurately reflects Dr. Karpf's opinion. This is not to suggest that Mr. Presley did not speak with Dr. Karpf or that Mr. Presley falsified his understanding of the opinion Dr. Karpf communicated during the phone call. Rather, it is the recognition that a physician's opinion concerning a patient's functional capacity is a nuanced analysis that is not easily recorded in shorthand during a phone call.

As it stands, the only opinion offered by Dr. Karpf is the June 9, 2010 Psychological Evaluation which bears his signature. The ALJ discussed this evaluation, but did not weigh it, instead only weighing the opinion recorded by Mr. Presley. The Court finds it was inappropriate for the ALJ to do so. For these reasons, the Court will remand this case with directions for the ALJ to re-evaluate the record as it pertains to Dr. Karpf, to determine directly from Dr. Karpf the accuracy of his opinion as recorded by Mr. Presley, and to conduct any further proceedings as necessary.

Because the ALJ's re-evaluation of Dr. Karpf's opinion may ultimately require the ALJ to alter her RFC finding, the Court will defer at this time from considering Plaintiff's remaining contention that the ALJ erred by failing to properly account for Plaintiff's agoraphobia, heart abnormalities, and upper extremities in the RFC finding or in the hypothetical question posed to the vocational expert.

**C. Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on June 27, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties